**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| KEITH L. PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARK A. CONRAD, ROGER | ) | |
| MICHEL, CAESAR ARCHILLA, | ) | |
| LETICIA MUNOZ, CANDANCE | ) | |
| KOCHIN, THOMAS MERRIGAN, | ) | Civil Action No. |
| PAMELA LOMBARDINI, SHEILA | ) | 10-40085-FDS |
| HUBBARD, MICHAEL POMAROLE, | ) | |
| MAUREEN WALSH, MARK | ) | |
| DASNEVES, DONNA FENTIMAN, | ) | |
| MARCIA CURTAIN, MARCIA HILL, | ) | |
| and CONCETTA TRIFONE, in their | ) | |
| individual and official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CORRECTED MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION,
PLAINTIFF'S MOTION FOR CONTEMPT AND PERMANENT INJUNCTION,
<u>AND DEFENDANTS' MOTION TO DISMISS</u>**

**SAYLOR, J.**

This action arises out of an apparent failure of state officials to correct an inaccurate description of a prior conviction in a parole file. Plaintiff Keith Phillips was convicted in 1990 of rape and indecent assault and battery on a person over fourteen. After moving in and out of prison and the parole system for ten years, he discovered in 2000 that his second conviction was described as "indecent assault and battery on a child of fourteen" in his parole file. Since then, he has made several unsuccessful attempts to correct the file in order to avoid mischaracterization as a perpetrator of a crime against a child.

Phillips was on parole and living in South Carolina from 2003 to 2009. In August 2009 he was arrested for a driving infraction and transferred back to Massachusetts. At his final parole revocation hearing in October 2009, one of the parole board members asked a testifying witness whether she knew that Phillips had been convicted of "indecent assault and battery on a child under fourteen." Phillips later discovered that this same incorrect description of his prior conviction was included twice in his summary parole file considered by the parole board. Citing his failure to register as a sex offender and the fact that his whereabouts were unknown, the parole board voted to revoke his parole. He is now confined in state prison.

Phillips has brought this action under 42 U.S.C. § 1983 against the Massachusetts Parole Board and fifteen current and former parole board members and officers. He seeks damages, attorney's fees, declaratory relief, and injunctive relief that, among other things, would expunge the incorrect characterization of his prior conviction as one involving a child. The Commonwealth does not appear to contest that the Parole Board records are inaccurate, but contends that the complaint nonetheless fails to state a claim.

Pending before the Court is plaintiff's motion for a preliminary injunction, plaintiff's motion for contempt and a permanent injunction, and defendants' motion to dismiss. For the following reasons, plaintiff's motions will be denied, and defendants' motion to dismiss will be granted in part and denied in part. Plaintiff's claims for damages, injunctive relief, and attorney's fees will be dismissed, but his claim for declaratory relief will not.

**I.**   **Factual Background**

For the purposes of deciding the motion, the Court accepts as true all well-pleaded facts in plaintiff's *pro se* complaint.

A.      **The Underlying Convictions and Inaccuracy in the Parole File**

Phillips was tried and convicted of rape and indecent assault and battery on a person fourteen or older in Worcester Superior Court in 1990. (Compl. ¶ 27).[1] He was sentenced to twenty years in prison for the rape conviction and a concurrent term of five years for the indecent assault conviction. (*Id.*). From 1992 to 2000, Phillips was intermittently paroled, only to have his parole revoked for failure to comply with various conditions. (*Id.* ¶¶ 29-35).

In 2000, with the assistance of a law student in preparation for a parole revocation hearing, Phillips first obtained a copy of his parole file. (*Id.* ¶ 37). He noticed that his second conviction was listed as "indecent assault and battery on a child of fourteen" rather than the crime for which he was actually convicted—indecent assault and battery on a person fourteen or older. (*Id.*). Within a week, he wrote to the parole board's legal department requesting that the description of the conviction be corrected. He received no response. (*Id.* ¶¶ 41, 42). Over the next two years, parole officials in Georgia and South Carolina on several occasions rejected Phillips's living arrangements because of his proximity to children. (*Id.* ¶¶ 47, 55, 58).

Suspecting that the mischaracterization of his conviction impacted these decisions, Phillips wrote to his Massachusetts institutional parole officer, defendant Donna Fentiman, in March 2002 to alert her that his file reflected an incorrect description of the offense. (*Id.* ¶¶ 49, 50, Ex. 7). He received no answer. (*Id.* ¶ 51). In July 2002, he wrote to an attorney at the parole board, again requesting that the term "child" be removed and replaced with the correct term "person." (*Id.* ¶ 59, Ex. 12). He also met with another institutional parole officer, defendant

---

[1] The crime of "indecent assault and battery on a person fourteen or older" is set forth in Mass. Gen. Laws ch. 265, § 13H; the crime of rape is set forth in Mass. Gen. Laws ch. 265, § 22. A separate statute, Mass. Gen. Laws ch. 265, § 13B, criminalizes "indecent assault and battery on a child under age of fourteen." Phillips was neither tried nor convicted under the latter statute.

Mark Dasneves, in early October 2002 and told him of the inaccuracy in the parole file and in a 1999 Record of Decision form used by the parole board. (*Id.* ¶¶ 63-67, Ex. 3).[2]

On October 22, 2002, the attorney to whom Phillips had written sent him a letter acknowledging the mistaken description of his second conviction. The letter stated:

> The Legal Unit has reviewed your claim that the Massachusetts Parole Board used the word "child" instead of "person" in its description of your conviction under G.L. c. 265, §13H in its Record of Decision. The Legal Unit has confirmed that you were convicted under G.L. c. 265, §13H and that this conviction is statutorily defined as indecent assault and battery on a 'person fourteen or older.' The Massachusetts Parole Board has amended that description of the conviction in its Records of Decision accordingly.

(*Id.* ¶ 68, Ex. 16). Phillips responded to the attorney four days later with a letter requesting that his entire parole file—not just the Record of Decision—be corrected to reflect the accurate conviction, as he understood that Georgia and South Carolina officials would likely consult the parole file. (*Id.* ¶ 70, Ex. 17). The attorney told Phillips to submit another request to Fentiman, who would review his file to determine if any inaccuracies persisted. (*Id.* ¶ 71, Ex. 18). In the meantime, Fentiman recommended to her superior officer, defendant Marcia Curtain, that Phillips's parole be revoked; Curtain agreed with this recommendation. (*Id.* ¶¶ 61, 62, Ex. 14).

In anticipation of an upcoming hearing with the parole board in December 2002, Phillips again met with Dasneves. He also submitted a memorandum to the chair of the parole board, defendant Michael Pomarole, detailing the recent chain of events. (*Id.* ¶ 72, Ex. 4).[3] He explained the circumstances in his hearing on December 20. (*Id.* ¶ 74). In February 2003, he

---

[2] A document apparently written by Dasneves confirms that Phillips told him of the inaccuracy in the file at this meeting and that Dasneves was aware of Phillips's correct conviction. (Compl., Ex. 15 ("Subject states that South Carolina and Georgia both turned him down because they thought he raped a child. Subject was in fact convicted of 265-22 Rape.")).

[3] Defendants Sheila Hubbard and Maureen Walsh were former parole board members who made parole decisions about Phillips between 1999 and 2003. (Compl. ¶¶ 18, 20, 40, 74, 75).

was released on parole to South Carolina, where he lived until 2009. (*Id.* ¶ 76).

   B.   **The 2009 Arrest and Parole Revocation**

Phillips was arrested on August 5, 2009, in South Carolina for motor vehicle violations. (*Id.* ¶ 77). His fiancée posted bail, but he returned to the police station the following day and was taken into custody. (*Id.* ¶¶ 78, 79). By late August, he was transferred to MCI Cedar Junction in South Walpole, Massachusetts. (*Id.* ¶ 80).

Phillips's final parole revocation hearing was to be held on October 8, 2009. In preparation for the hearing, defendant Concetta Trifone, an institutional parole officer, compiled a summary package of documents for defendants Pamela Lombardini and Thomas Merrigan, the parole board members designated for Phillips's hearing panel. (*Id.* ¶ 81). The package contained two descriptions of Phillips's second conviction as "indecent assault and battery on a child under fourteen." (*Id.* ¶ 82, Ex. 1).

Phillips's fiancée traveled from South Carolina to testify on his behalf at the hearing. (*Id.* ¶ 86, Ex. 24). During her testimony, Lombardini asked if she knew that Phillips had been convicted of indecent assault and battery on a child under fourteen. (*Id.* ¶ 89, Ex. 24). Later that afternoon, Lombardini and Merrigan voted to revoke Phillips's parole on the grounds that he had failed to register as a sex offender and that his whereabouts had been unknown for five years. (Def.'s Mot., Ex. 1). Phillips first obtained a copy of the summary file used in the hearing on October 26. He reviewed it and noticed the two inaccurate descriptions of his prior conviction. (Compl. ¶ 95). His subsequent administrative appeal of the revocation decision was denied by parole board staff member and defendant Marcia Hill in November 2009, and his appeal to the

5

full parole board was denied in February 2010. (*Id.* ¶¶ 98, 101).[4] At present, Phillips is confined in Massachusetts state prison.

## II.     **Procedural Background**

Phillips filed this *pro se* complaint on May 10, 2010. The complaint alleges that defendants—the Massachusetts Parole Board and fifteen current and former members, officers, and staff members of the parole board, sued in their official and individual capacities[5]—violated his due process rights under the Fourteenth Amendment to the United States Constitution.[6] The complaint seeks damages, declaratory relief, and injunctive relief under 42 U.S.C. § 1983 and attorney's fees under 42 U.S.C. § 1988. Specifically, the complaint requests that this Court (1) expunge from his parole file the inaccurate description of his prior conviction, (2) send a "Notice of Correction" to the Federal Bureau of Investigation and the Georgia and South Carolina parole authorities, (3) direct defendants to conduct a new parole revocation hearing, and (4) order defendants not to use or rely on the inaccurate description of his second conviction in future parole hearings.

---

[4] Defendants Conrad, Lombardini, Merrigan, Munoz, Kochin, Archilla, and Michel all voted to deny Phillips's appeal to the full parole board. (Compl. ¶ 101).

[5] Defendants contend in their motion to dismiss that plaintiff has not pleaded sufficient facts to raise claims against defendants in their individual capacities. This argument is without merit. Because the complaint was filed *pro se*, this Court will read it liberally. *See Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir. 1990) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Even absent a liberal reading, however, the complaint is pleaded with factual particularity that is plainly sufficient to assert claims against defendants in their individual capacities.

[6] The complaint also briefly adverts to a defamation claim against defendants. (Compl. ¶ 5). In general, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984). "[T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id.* Under limited circumstances, however, an inmate may assert a defamation-type claim against state officials when that claim implicates a constitutionally-protected liberty interest. *See Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980); *Paul v. Davis*, 424 U.S. 693, 701-10 (1976)). To the extent that Phillips is bringing a claim for injunctive relief on a defamation theory against the parole board members and officers, the Court will consider it as part of his claim under 42 U.S.C. § 1983 for violations of due process.

The same day, Phillips filed a *pro se* motion for a temporary restraining order and a preliminary injunction under Fed. R. Civ. P. 65(a) and (b). Attached to the motion was a sworn declaration that reasserts the facts from the complaint and details two types of alleged injuries: (1) the "stigmatizing effects a charge like child molestation induces," and (2) the recurrent inability to receive a "fair hearing" by parole officials because of the of inaccurate description of the conviction.

The Court issued an order on June 9, 2010 denying plaintiff's motion for a temporary restraining order for failure to allege immediate and irreparable harm and failure to certify to the Court any efforts made to notify defendants of his request for emergency relief. *See* Fed. R. Civ. P. 65(b)(1)(A), (B). It converted the motion into a pending motion for a preliminary injunction, and ordered defendants to respond within 21 days of service of the summons, complaint, and motion. Exercising its screening authority under 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court dismissed all claims against the Massachusetts Parole Board as barred by the Eleventh Amendment to the Constitution and otherwise not cognizable under 42 U.S.C. § 1983. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997) (the Eleventh Amendment bars federal courts from hearing suits against states, state agents, and state agencies absent waiver or abrogation of sovereign immunity); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (a state and its agencies are not considered "persons" under § 1983).

Defendants were served with the summons, motion, and complaint on July 21, 2010. Entries to the docket alerting parties that service had occurred were not posted, however, until August 12, 2010, more than 21 days after service was made. In the meantime, on August 5, Phillips retained counsel. On August 18, he filed a motion for contempt and a permanent

7

injunction, contending that defendants were in contempt of the Court's order for failure to respond within 21 days of service. Within ten days, defendants filed a motion to dismiss and an opposition to plaintiff's motion for contempt and a permanent injunction.

## III.     Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

## IV. Defendants' Motion to Dismiss

### A. Cognizability of the § 1983 Claims

As a threshold matter, the Court is required to consider whether it has jurisdiction over this action. *See White v. Gittens*, 121 F.3d 803, 806 (1st Cir. 1997). That question turns on the nature of the relief that plaintiff seeks and an assessment of whether the challenge necessarily implies the invalidity of the parole revocation decision and plaintiff's continuing confinement.

The Supreme Court held in *Preiser v. Rodriguez* that a habeas action, rather than a suit under § 1983, is the proper vehicle for a state prisoner to challenge "the fact or duration of his confinement." 411 U.S. 475, 489 (1973). Actions under § 1983 are not cognizable when the prisoner seeks "immediate release from prison" or a shortening of the term of confinement. *Id.* at 482. The Court expanded on this principle in *Heck v. Humphrey*, explaining that even when a plaintiff seeks monetary damages rather than a speedier release, federal courts may not consider § 1983 claims that impugn the lawfulness of confinement. *See* 512 U.S. 475, 485 (1994); *White*, 121 F.3d at 806-07 (holding that a § 1983 action challenging a parole revocation was not cognizable under *Heck* because plaintiff contended that the revocation was constitutionally invalid). When state prisoner's challenge "necessarily impl[ies] . . . the invalidity of" a parole revocation determination, the action must be pursued through a petition for a writ of habeas corpus. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *see also Butterfield v. Bail*, 120 F.3d 1023, 1024-25 (9th Cir. 1997) (holding that § 1983 action against parole board defendants who considered false information in denying parole was not cognizable because "the remedy [plaintiff] ultimately seeks is parole"); *Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996)

(same).[7]

In 2005, the Supreme Court clarified that § 1983 actions remain available to state prisoners whose claims "would not necessarily" imply the invalidity of their confinement or "spell immediate or speedier release." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). The Court explained that § 1983 claims are cognizable when "[s]uccess for [the plaintiff] does not mean immediate release from confinement or a shorter stay in prison," but "means at most new eligibility review, which at most will speed *consideration* of a new parole application." *Id.* at 82 (emphasis in original).

Here, plaintiff's claims do not hinge on the assertion that the revocation of his parole was unconstitutional. *Cf. Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir. 1998). He does not attack the fact or validity of his confinement, nor does he seek immediate release or a shortening of his imprisonment as a remedy. Rather, he seeks a correction of his parole file to reflect the actual crime for which he convicted and renewed consideration at a revocation hearing not tainted by the incorrect information. Nor does he maintain that the incorrect description of the indecent assault and battery conviction as against a child was the sole or even predominant cause of the parole board's revocation decision. Indeed, the complaint does not dispute the independent grounds cited by the board in the revocation decision; it solely protests the persistent use of and reliance upon the incorrect description of his conviction.

The Eighth Circuit has explained that in such circumstances, where the prisoner "is requesting corrections to his parole record, rather than challenging the legality of his sentence or

---

[7] The *Balisok* court was careful to note that a claim for prospective injunctive relief that would bar future unconstitutional procedures may be properly brought pursuant to § 1983. *Balisok*, 520 U.S. at 648 ("Ordinarily, a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983.").

seeking immediate or speedier release, . . . the case falls within the narrow class of cases in which a prisoner can file a section 1983 action seeking equitable relief." *Adams v. Agniel*, 405 F.3d 643, 644-45 (8th Cir. 2005); *see also Buckines v. Michigan Parole Bd.*, 2008 WL 696438, at *4 (W.D. Mich. Mar. 12, 2008) (plaintiff's § 1983 action alleging that parole board members relied on false information when denying him parole was not barred by *Heck* because "[p]laintiff does not directly seek release from prison"). Plaintiff's claim is thus properly brought as a § 1983 action rather than a habeas petition and is cognizable by this Court.

### B. Statute of Limitations: Claims Against Hubbard, Pomarole, Fentiman, Dasneves, and Curtain

Defendants contend that the claims against Hubbard, Pomarole, Fentiman, Dasneves, and Curtain are barred by the statute of limitations that applies to cases filed under § 1983. *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) (directing federal courts to look to state law for the relevant statute of limitations for § 1983 claims); *McIntosh v. Antonino*, 71 F.3d 29, 34 (1st Cir. 1995). Because § 1983 contains no limitations period, federal courts borrow the relevant state-law statute of limitations for personal injury torts. *McIntosh*, 71 F.3d at 34. In Massachusetts, that period is three years. Mass. Gen. Laws ch. 260, § 2A.

Federal law, however, determines when the accrual period begins. *McIntosh*, 71 F.3d at 34. "Under federal law, accrual starts when the plaintiff 'knows, or has reason to know, of the injury on which the action is based.'" *Id.* (quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 353 (1st Cir. 1992)). The complaint alleges that "from at least 1996 to 2003," Hubbard, Pomarole, Fentiman, Dasneves, and Curtain "altered or facilitated the alteration of the Plaintiff's offense description to that of child molestation and used said alteration against Plaintiff in Parole Hearings." (Compl. ¶ 109). It asserts that plaintiff became aware of these alleged injuries

11

caused by the five defendants sometime between 1999 and 2002. (Compl. ¶¶ 61-62, Ex. 14 (Curtain); 63-67 (Dasneves); 49-51, 56, 61 (Fentiman); 72-73, 75 (Pomarole); 37, 40, Ex. 3 (Hubbard)). Nowhere does the complaint allege that these defendants acted to cause further harm to plaintiff after 2003. Because the harms allegedly caused by these defendants accrued more than three years before plaintiff filed his complaint, and plaintiff was plainly aware of the resulting injury by 2002, the applicable statute of limitations now bars claims against them arising out of the actions described in the complaint. The motion to dismiss will therefore be granted as to defendants Hubbard, Pomarole, Fentiman, Dasneves, and Curtain.[8]

### C. Claims for Damages

Parole board members are entitled to absolute immunity for actions taken within the scope of their official duties in § 1983 actions seeking monetary damages. *Johnson v. Rhode Island Parole Bd. Members*, 815 F.2d 5, 8 (1st Cir. 1987). Because parole board members perform quasi-judicial functions when they decide whether to grant, deny, or revoke parole, the First Circuit has determined that they should be afforded the same protection as judges. *See id.* at 6. Parole officers performing functions related to helping the "quasi-judicial body [of the Parole Board] to render a decision" are also absolutely immune from damages claims. *Namey v. Reilly*, 926 F. Supp. 5, 9-10 (D. Mass. 1996) (citing *Anton v. Getty*, 78 F.3d 393 (8th Cir. 1996)). Thus, when parole officers prepare materials upon which the parole board will rely when making decisions to grant, deny, or revoke parole, they are protected by absolute immunity from damages liability. *See id.* at 9.

---

[8] Defendants have not moved to dismiss claims against Maureen Walsh as time-barred. It appears to the Court, however, that any claims against Walsh are also barred by the statute of limitations for the same reasons. The Court will accordingly dismiss all claims against Walsh 30 days after the issuance of this order, unless plaintiffs shows good cause in writing why such dismissal is inappropriate.

The alleged injuries in this case all relate to quasi-judicial actions taken by parole board members, officers, and staff members. They involve and alleged failure to correct a parole file and alleged knowing consideration of false information while making parole decisions. Because any harm caused by defendants in this case stems from performance of quasi-judicial functions, defendants are all entitled to absolute immunity from damages liability. *See Johnson*, 815 F.2d at 8; *Namey*, 926 F. Supp. at 9-10. Defendants' motion to dismiss plaintiff's damages claims will accordingly be granted.

### D. Availability of Injunctive Relief and Attorney's Fees

The Federal Courts Improvement Act of 1996 ("FCIA") amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Pub. L. No. 104-317, § 309(c), 110 Stat. 3853 (codified as amended at 42 U.S.C. § 1983).[9] Employing the same language, the FCIA also amended 42 U.S.C. § 1988(b) to likewise bar actions for attorney's fees against "a judicial officer." *Id.* § 309(b). Defendants contend that parole board members, officers, and staff members are "judicial officers" within the meaning of this statute. If this is so, as defendants maintain, this Court may not award injunctive relief or attorney's fees to plaintiff because neither of the statute's exceptions apply.

Neither the Supreme Court nor the First Circuit has interpreted the phrase "judicial

---

[9] Congress enacted the FCIA to overturn *Pulliam v. Allen*, a case in which the Supreme Court held that actions for injunctive relief under § 1983 could lie against state-court magistrate judges. *See* 466 U.S. 522, 541-42 (1984). *Pulliam* considered common-law history and the statutory history of § 1983 before concluding that the statute did not bar injunctive relief against state judges acting in a judicial capacity. *Id.* at 529-41.

13

officers" in the context of this statute.[10] Parole board members and officers performing quasi-judicial functions within the scope of their official duties are treated like judges under the doctrine of absolute immunity from damages. *See Johnson*, 815 F.2d at 8; *Namey*, 926 F. Supp. at 9-10. And the only federal courts to have considered the issue have concluded that claims for injunctive relief and attorney's fees against parole board officials performing quasi-adjudicative functions are likewise barred. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999); *see also Gilmore v. Bostic*, 636 F. Supp. 2d 496, 506 (S.D. W.Va. 2009) (quasi-judicial actors are immune from claims for prospective injunctive relief under § 1983); *Mattatall v. Rhode Island*, 2009 WL 3514634, at *4 (D.R.I. Oct. 29, 2009) ("th[e] language in the FCIA prohibiting injunctive relief against 'judicial officers' applies to quasi-judicial actors, such as parole board members, performing tasks functionally equivalent to judges"); *Pelletier v. Rhode Island*, 2008 WL 5062162, at *5– *6 (D.R.I. Nov. 26, 2008) (same). *But see Simmons v. Fabian*, 743 N.W.2d 281 (Minn. Ct. App. 2007) (determining that the phrase "judicial officers" does not extend to parole officials immunity from claims for prospective injunctive relief under 42 U.S.C. § 1983).

There is at least a colorable argument that Congress did not intend the phrase "judicial officers" in the FCIA to encompass parole board officials. For example, the Senate Report accompanying the legislation indicated that the purpose of section 309(b) and (c) of the FCIA was to "restore[] the doctrine of judicial immunity to the status it occupied prior to the Supreme Court's decision in *Pulliam v. Allen*." S. REP. NO. 104-366, at 37 (1996). The Senate Report went on to note, "In the 12 years since *Pulliam*, thousands of Federal cases have been filed

---

[10] The First Circuit has written, without analysis, that a union bringing a § 1983 claim for injunctive relief against the commissioners of the Massachusetts Commission Against Discrimination could not recover under the statute. *See Local Union No. 12004, United Steelworkers of America v. Massachusetts*, 377 F.3d 64, 75 n.9 (1st Cir. 2004).

14

against judges and magistrates. The overwhelming majority of these cases lack merit and are ultimately dismissed. . . . [T]he risk to judges of burdensome litigation creates a chilling effect that threatens judicial independence and may impair the day-to-day decisions of the judiciary in close or controversial cases." *Id.* at 37. The Report thus focuses entirely on the effect of the decision and the statute on the judiciary, and makes no reference to quasi-judicial officers.[11]

Nonetheless, it would be incongruous to determine that parole board members and officers performing quasi-adjudicative functions are entitled to absolute immunity from damages but are not "judicial officers" immune from actions seeking injunctions and attorney's fees under § 1983 and § 1988. If Congress intended the statute to apply differently to quasi-judicial officers, it would have been easy enough to say so. Accordingly, the parole board defendants in this case are "judicial officers" within the meaning of the FCIA, and are therefore generally immune from actions seeking injunctive relief or attorney's fees, absent violation of a declaratory decree or the unavailability of declaratory relief. The claims for injunctive relief and attorney's fees will therefore be dismissed.

### E. <u>Availability of Declaratory Relief</u>

The plain language of the FCIA indicates that declaratory relief is available against judicial officers under § 1983. *See Nollet v. Justices of the Trial Ct. of Com. of Mass.*, 83 F. Supp. 2d 204, 209-210 (D. Mass. 2000). Because § 1983 is a method for vindicating rights rather than a source of substantive rights itself, the remaining action for declaratory judgment brought under § 1983 must identify the specific constitutional or federal statutory right infringed.

---

[11] In the process of explaining the sub-sections of section 309(c) of the FCIA, the Senate Report noted that the first section "codifies the general prohibition against holding judicial officers (justices, judges and magistrates) liable . . ." *Id.* at 37.

15

*See Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff contends that defendants' failure to expunge from his file false information about his prior conviction and their knowing reliance on that false information constitutes a due process violation. Defendants contend that plaintiff has not alleged any deprivation of a constitutionally protected liberty interest under the Due Process Clause, and therefore has failed to state a claim upon which relief can be granted.

Defendants are correct to contend that plaintiff does not have a constitutionally protected liberty interest in being released on parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 9-11 (1979). Furthermore, the Massachusetts statutes governing the parole board's discretion do not create a state liberty interest in parole. *Lanier v. Fair*, 876 F.2d 243, 251 n.10 (1st Cir. 1989) ("the relevant state statutes have been held not to convey a protected liberty interest in the granting of parole or in parole eligibility") (citing *Commonwealth v. Hogan*, 456 N.E.2d 1162, 1166 (Mass. App. Ct. 1983)); *Lynch v. Hubbard*, 47 F. Supp. 2d 125, 127-28 (D. Mass. 1999), *aff'd*, 248 F.3d 1127, 2000 WL 1824490 (1st Cir. 2000) (unpub. dec.).

Plaintiff may, however, have a liberty interest, protected by the Due Process Clause, in expunging incorrect information relied upon in a parole hearing from his parole file. In *Paine v. Baker*, the Fourth Circuit held that "a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." 595 F.2d 197, 201 (4th Cir. 1979). There is some doubt as to whether the due process right recognized in *Paine* remains viable. *See, e.g.*, *Johnson v. Rodriguez*, 110 F.3d 299, 308-09 & n.13 (5th Cir. 1997) (doubting the ongoing validity of the right); *Reynolds v. Williamson*, 197 Fed. Appx. 196, 199 (3d Cir. 2006) (not

precedential) (assuming *arguendo* that a right to have "prejudicial erroneous information expunged" but declining to decide whether to endorse the right); *Farinaro v. Coughlin*, 642 F. Supp. 276, 281-82 (S.D.N.Y. 1986) (recognizing the right); *Fox v. Craven*, 2007 WL 2782071, at *9-*11 (D. Idaho 2007) (employing a balancing test to determine whether a *Paine*-like constitutional right exists). The Fifth Circuit, in particular, has reasoned that in light of *Greenholtz*'s holding that there is no due process interest in the possibility of parole, a plaintiff could not meet *Paine*'s third requirement that false information be relied upon to a constitutionally significant degree. *Johnson*, 110 F.3d at 308-09 & n.13.

The First Circuit has not addressed the matter. In *Reyes v. Supervisor of Drug Enforcement Administration*, it distinguished the *Paine* plaintiff's claims from the claims of the *Reyes* plaintiff in order to conclude that the *Reyes* plaintiff had not alleged an ongoing or future threat of infringement on a liberty interest. 834 F.2d 1093, 1098 (1st Cir. 1987). Unlike the plaintiff in *Reyes*, however, Phillips has alleged two potential ongoing infringements on liberty: continued reliance by the parole board on incorrect information at future parole hearings, and a stigmatic injury of being labeled as a perpetrator of a sexual crime against a child.

Because parties have not briefed the matter, the Court will not grant defendant's motion to dismiss for failure to state a claim under the Due Process Clause.[12] Assuming that plaintiff does have a liberty interest in expunging false information in his parole file upon which parole members have knowingly relied, the first and second prongs of the *Paine* test are seemingly not in dispute. Whether plaintiff could meet the third prong of the *Paine* test remains an open

---

[12] The parties have also not briefed the question of whether equitable expunction of the inaccurate description of plaintiff's conviction would be appropriate in this matter. This Court has discretion to order equitable expunction of false information, but the power is narrow one, often not used if plaintiff has alternative remedies for relief. *See Reyes*, 834 F.2d at 1098 (citing *United States v. Linn*, 513 F.2d 925, 927 (10th Cir. 1975)).

question. As a matter of law, the inaccurate description of his conviction cannot be relied upon in a constitutionally significant way to the extent that it implicates a future interest in parole. However, another liberty interest, such as a reputation-based interest in not being stigmatized as a sex offender who committed crime against a child, may be at stake.[13]

Accordingly, defendants' motion to dismiss plaintiff's claims for declaratory relief under Fed. R. Civ. P. 12(b)(6) will be denied.

## V. **Plaintiff's Motion for Contempt**

Plaintiff has moved to hold defendants in contempt for failure to comply with this Court's June 9 order by not responding within 21 days of service. He presents little argument for this motion, other than to point to defendants' noncompliance.

A federal court should consider several factors when determining whether to exercise its inherent power to hold a party in contempt. *In re Grand Jury Investigation*, 545 F.3d 21, 25 (1st

---

[13] Whether this stigmatic injury rises to the level of a liberty interest protected by the Due Process Clause is also an open question. The Supreme Court held in *Paul v. Davis* that a person's interest in his good name or good reputation alone does not trigger due process protection. 424 U.S. 693, 711-12 (1976). Subsequent cases have held that an inmate can make out a "stigma plus" due process claim based on reputational harm if he can prove "(1) the government made a statement about him or her that is *sufficiently derogatory* to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that '*significantly altered* [his or] her status as a matter of law.'" *Pagani-Gallego v. Sabol*, 2008 WL 886032, at *3 (D. Mass. Mar. 27, 2008) (quoting *Gwinn v. Awmiller*, 354 F.3d 1211, 1224 (10th Cir. 2004)). Several courts have determined that being falsely classified as a sex offender is a sufficient injury to reputation to make out a due process violation, when combined with a showing of an additional burden caused by the false classification. *E.g.*, *Vega v. Lantz*, 596 F.3d 77, 81-82 (2d Cir. 2010) ("it continues to be the case what wrongly classifying an inmate as a sex offender may have a stigmatizing effect which implicates a constitutional liberty interest"); *Gwinn*, 354 F.3d at 1223-24; *Kirby v. Siegelman*, 195 F.3d 1285, 1292 (11th Cir. 1999); *Neal v. Shimoda*, 131 F.3d 818, 829-31 (9th Cir. 1997). Here, even though plaintiff is properly classified as a sex offender because of his rape conviction, he may have suffered a reputational harm that raises a due process violation resulting from the persistent classification as one who committed an indecent assault and battery on a child under fourteen. As to the second prong, he has alleged that this false classification negatively impacted his ability to find a suitable living arrangement in South Carolina and Georgia because of proximity to children. Neither party suggests that plaintiff has been afforded any hearing or procedural protections to contest his classification as a perpetrator of an indecent assault and battery on a child under fourteen. *Cf. Gwinn*, 354 F.3d at 1224.

Cir. 2008). The First Circuit has articulated these factors as follows:

> First, a complainant must prove civil contempt by clear and convincing evidence . . . Second, the putative contemnor 'must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion.' . . . Third, 'any ambiguities or uncertainties in such a court order must be read in a light favorable to the person charged with contempt.' . . . And, finally, even if all of these conditions are satisfied, the trial court retains a certain negative discretion; that is, the court retains the authority to eschew the imposition of a contempt sanction if it deems such eschewal to be in the interests of justice in the particular case.

*Id.* (citations omitted). Here, at a minimum, plaintiff's motion fails on the second factor. While defendants did not comply with the Court's order, they did not do so in part because notice that service had been made had not been posted to the docket, and defendants' attorney was not otherwise advised that service was made. Without notice on the docket that service was made, there might have been reasonable doubt as to the date on which a response was due. Once notified that the period had elapsed, defendants' attorney filed a timely motion to dismiss and opposition to plaintiff's motions. The Court will therefore exercise its discretion and deny plaintiff's motion for contempt.

## VI. Plaintiff's Motions for Injunctive Relief

Plaintiff requests that this Court issue a preliminary injunction that would bar defendants from "engaging in [the] unlawful conduct alleged in his complaint." The Court will interpret this language as a request for an injunction ordering defendants to expunge the incorrect description of plaintiff's conviction and direct defendants not to rely on that information in future parole hearings. Plaintiffs has also filed a motion seeking a permanent injunction. For the reasons stated above, injunctive relief is not available against the defendants, and therefore these motions will be denied.

## VII. Conclusion

For the foregoing reasons, defendants' motion to dismiss is GRANTED as to the claims against Hubbard, Pomarole, Fentiman, Dasneves, and Curtain, and is GRANTED as to all claims for damages, injunctive relief, and attorney's fees. Defendants' motion to dismiss is DENIED as to the claim for declaratory relief. Plaintiff's motion for contempt is DENIED. Plaintiff's motions for preliminary injunction and permanent injunction are DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: February 18, 2011
United States District Judge